UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID J. THOMPSON,

          Plaintiff,

v.                                           Case No. 24-CV-486

CHESERAE CRISCI,

          Defendant.

---

### DECISION AND ORDER

---

Plaintiff David J. Thompson, who is incarcerated and representing himself, brings this lawsuit under 42 U.S.C. § 1983. Thompson was allowed to proceed against defendant Cheserae Crisci pursuant to the Eighth Amendment because she was allegedly deliberately indifferent to Thompson's threats of self-harm. The defendants filed a motion for summary judgment, which is fully briefed and ready for a decision. (ECF Nos. 21.) The parties have consented to the jurisdiction of a magistrate judge. (ECF Nos. 9, 14.)

### PRELIMINARY MATTER

Crisci argues that Thompson failed to follow Federal Rule Civil Procedure 56 and Civil Local Rule 56 when responding to her motion for summary judgment by failing to dispute her proposed findings of fact. (ECF No. 41 at 2.) District courts are entitled to construe *pro se* submissions leniently and may overlook a plaintiff's noncompliance by construing the limited evidence in a light most favorable to the plaintiff. *See Gray v.*

*Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016). While Thompson's submissions do not formally conform with the rules, his response contains sufficient facts to allow the court to rule on Crisci's summary judgment motion. Thompson also invokes 28 U.S.C. § 1746 in his complaint, which is enough to convert the complaint into an affidavit for purposes of summary judgment. *See Beal v. Beller*, 847 F.3d 897, 901 (7th Cir. 2017); *Owens v. Hinsley*, 635 F.3d 950, 954–55 (7th Cir. 2011). As such, the court will consider the information contained in Thompson's submissions where appropriate in deciding Crisci's motion.

**FACTS**

At all times relevant Thompson was incarcerated at Waupun Correctional Institution. (ECF No. 23, ¶ 1.) Crisci was employed as a correctional officer at Waupun. (*Id.*, ¶ 2.)

On February 5, 2024, Crisci was working as an Observation Officer in the Restrictive Housing Unit (RHU) at Waupun, where she was assigned to check on prisoners who were placed on clinical observation status. (ECF No. 23, ¶ 11.) At approximately 3:15 p.m., Crisci was conducting rounds. (*Id.*, ¶ 14.) When Crisci stopped at Thompson's cell, he tried to talk to her, but Crisci states she "could barely hear him because of all the other noises going on in the RHU." (*Id.*, ¶ 15.)

Crisci's body camera video captured the interaction. (ECF No. 24-2.) Crisci asks Thompson, "What's up?" Thompson replies asking for the "Serg." Crisci states, "The Serg? And let him know you want to talk to him right now? I don't know if he's busy right now." Thompson then responds, but it is clear Crisci does not hear him. She asks

him to repeat what he said, and he responds that he cut himself. Crisci asks Thompson to see the cut. She could not see it, so she gets a crate to stand on to have a better vantage point.

Crisci appears to have a hard time hearing what Thompson is saying. Crisci still could not see any cut, so she asks Thompson "where?" and he responds, "Right here, on my wrist." Crisci again asks where, and Thompson responds on his wrist and that he wants to talk to the Sergeant. Crisci says "okay" and again asks to see the cut. Thompson asks her if she thinks he is lying to her, to which Crisci responds, "no, I just can't see anything." Crisci asserts she observed superficial cuts on Thompson's left inner lower arm, but the video does not confirm this.

Thompson then says something that is unintelligible, to which Crisci responds, "Well, if you were showing me, and it was legit, I'd call my radio." Thompson then states, "I ain't gonna lie to you." Thompson then stops talking to Crisci, which leads Crisci to ask, "What's going on Thompson?" When Thompson does not respond, she asks him if he wants to see non-defendant Jamal Russel, Thompson's floor officer. Thompson responds by showing Crisci his wrist. Crisci also asks whether Thompson has the instrument he used to cut himself with, and Thompson responds that he flushed it. Crisci states that was a good step in the right direction and tells Thompson that she would go get the Sergeant for him.

Crisci asserts that she could not find Sergeant Dustin Wiltgen but did find Russel and told him about Thompson's cut. (ECF No. 23, ¶¶ 41-42.) Crisci then continued on her rounds. (*Id.*, ¶ 42.)

3

At approximately 3:30 p.m., fifteen minutes after Crisci's first encounter with Thompson, she went to Thompson's cell for another observation check. (ECF No. 23, ¶ 53.) Again, this interaction was caught on video. (ECF No. 24-3.) Thompson shows Crisci his wrist, and this time she sees blood on Thompson's arm. She then uses her radio to call for assistance. While waiting for help, Crisci does not leave Thompson's cell front. Sergeant Wiltgen and Russel arrive, noting that Thompson cut himself. Wiltgen asks if Thompson still has the razor, to which Crisci responds, "He told me he flushed it." Because Wiltgen had the situation under control, Crisci left to continue her duties.

Crisci asserts that Wiltgen and Russel later conducted a search of Thompson's cell and did not find any razor or other sharp implement. (ECF No. 23, ¶ 62.) Also, there was no record of any razor or sharp object found as a result of a strip search of Thompson. (*Id.*, ¶ 63.)

Thompson's wound was examined by non-defendant Nurse Jessica Hosfelt, who noted there were "multiple superficial lacerations that were linear in nature." (ECF No. 23, ¶ 81.) Hosfelt cleaned the wound and "applied nonadherent dressing, followed by 4x4's and TegaDerm as a pressure dressing." (*Id.*, ¶ 82.)

From February 8 through February 20, 2024, Thompson went to the Health Services Unit (HSU) several times for wound care. (ECF No. 23, ¶¶ 90-101.) At the February 15, 2024, visit, Hosfelt noted that his wrist was healing "as expected." (*Id.*, ¶ 96.) On February 19, 2024, Thompson wrote a health service request (HSR) stating he was experiencing "excruciating pain" in his wound. (*Id.*, ¶ 99.) He stated that he kept "feeling a burning sensation". (*Id.*) Non-defendant Nurse Jenna Hiland examined

Thompson, cleaned the area, and changed the dressing. (*Id.*, ¶ 100.) Hosfelt examined Thompson on February 20, 2024, and noted that the wound was healing and did not require any additional treatment. (*Id.*, ¶ 101.)

Thompson generally does not dispute the facts but states that Crisci knew he had harmed himself less than an hour before their interaction at 3:15 p.m. (ECF No. 39 at 8.) However, he does not provide any facts as to how she knew that information (*e.g.,* whether from her previous rounds or if another officer told her). He also states he showed Crisci the razor during the 3:15 p.m. encounter, but that was not captured by her body camera. (*Id.* at 7.) According to Thompson, she looked down and saw that he had a razor in his hand. (*Id.*) He further asserts that Crisci failed to follow policy when she left his cell and did not call the Sergeant. (*Id.* at 2. 10.) Finally, he notes that HSU staff did not properly address the serious nature of his wounds prior to February 19 and ignored his pain. (*Id.* at 3.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

5

In evaluating a motion for summary judgment, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

Thompson claims that Crisci violated his Eighth Amendment rights when she did not intervene to prevent him from harming himself. The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain.'" *Pyles v. Fahim*, 771 F.3d 403, 408 (7th Cir. 2014) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "A § 1983 claim based upon a violation of the Eighth Amendment has both an objective and subjective element: (1) the harm that befell the prisoner must be objectively, sufficiently serious and a substantial risk to his or her health or safety, and (2) the individual defendants were deliberately indifferent to the

6

substantial risk to the prisoner's health and safety." *Collins v. Seeman*, 462 F.3d 757, 760 (7th Cir. 2006). In instances of self-harm or suicide, a plaintiff must allege that prison staff knew of a significant likelihood that he would imminently harm himself and then failed to take reasonable steps to prevent the self-harm. *Davis-Clair v. Turck*, 714 Fed App'x 605, 606 (7th Cir. 2018).

While a dispute exists as to how serious Thompson's wounds were, the dispute is immaterial because no reasonable factfinder could conclude that Crisci was deliberately indifferent to Thompson's threats of self-harm. "[A] plaintiff must 'establish not only that a state actor violated his constitutional rights, but also that the violation *caused* the plaintiff injury or damages." *Gabb v. Wexford Health Sources*, 945 F.3d 1027, 1032 (7th Cir. 2019) (quoting *Roe v. Elyea*, 631 F.3d 843, 846 (7th Cir. 2011) (emphasis in original). Thompson cannot show that Crisci caused his injury. When Crisci saw Thompson at 3:15 p.m., it is undisputed that she then immediately notified Russel after being unable to locate Sergeant Wiltken. When at 3:30 p.m. she saw that there was clearer evidence of Thompson's injuries, she immediately radioed for help.

Thompson asserts that at 3:15 p.m. he showed Crisci a razor and she did nothing, leading him to further harm himself at 3:30 p.m. However, the video shows that Crisci was positioned at an angle that it would have been impossible for her to look down through the window to see what was in Thompson's hand. Every time Thompson held up his hand to the window, it is clear he is not holding a razor. Even if Crisci did see a razor, her actions still do not rise to the level of deliberate indifference because, as explained above, she acted immediately in both instances to get help. Also, Thompson's

7

wounds were treated by 3:45 p.m., and he fails to establish that any delay caused by Crisci's actions exacerbated his injury or situation. *See Gabb*, 945 F.3d 1027 at 1034.

Thompson asserts that Crisci knew an hour before 3:15 p.m. that he was self-harming and did nothing. However, he provides no factual support for this allegation. Bald assertions that are not bolstered by more specific evidence are insufficient to create a genuine issue of material fact. *Drake v. Minn Mining & Mfg Co.*, 134 F.3d 878, 887 (7th Cir. 1998). Also, even if Crisci knew he was self-harming, Thompson does not provide any evidence that between 2:15 p.m. and 3:30 p.m. he was worse off because of Crisci's actions (or inaction).

In short, Crisci did what was required to address Thompson's situation and Thompson cannot demonstrate that as a result of Crisci's actions he suffered more than he would have if she acted the way he asserts she should have. Thompson argues that Crisci did not follow policy, but a policy violation is insufficient to establish a violation of constitutional rights. "Section 1983 protects against 'constitutional violations, not violations of . . . departmental regulation and . . . practices[.]'" *Estate of Simpson v. Gorbett*, 863 F.3d 740, 746 (7th Cir. 2017) (quoting *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003)).

Because no reasonable factfinder could find that Crisci was deliberately indifferent to Thompson's threats of self-harm, summary judgment is granted in her favor.

## CONCLUSION

For the foregoing reasons, Crisci's motion for summary judgment is granted. Crisci also argued she was entitled to qualified immunity but, because the court found in her favor on the merits, it does not need to address the qualified immunity argument. Because there are no remaining claims, the case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 21) is **GRANTED.**

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally

no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 20th day of November, 2025.

BY THE COURT

_William E. Duffin_
WILLIAM E. DUFFIN
United States Magistrate Judge

10

Case 2:24-cv-00486-WED   Filed 11/20/25   Page 10 of 10   Document 44